FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAR 25  P 2: 50

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

NEIL F. LETREN,

    Plaintiff,

v.                                                Case No.: GJH-15-622

ARCH BAY HOLDINGS, LLC, *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this putative class action, which was removed to this Court from the Circuit Court for Prince George's County, Maryland ("Prince George's County Circuit Court"), pro se Plaintiff, Neil F. Letren, alleges that Defendants, Arch Bay Holdings, LLC ("Arch"), Deutsche Bank Trust Corporation ("Deutsche Bank"), Specialized Loan Servicing, LLC ("SLS"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Stephen N. Goldberg (collectively, "Defendants") violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-101 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq. See* ECF Nos. 1 & 40. He also alleges various state law claims including breach of contract, unjust enrichment, and fraud. *Id.* Presently pending before the Court are two motions to dismiss: one filed by Arch and SLS, ECF No. 43, and another filed by Mr. Goldberg, ECF No. 52. Plaintiff opposes both motions. ECF Nos. 47 & 54. No hearing is necessary. *See*

Loc. R. 105.6 (D. Md.). For the reasons that follow, both motions to dismiss are granted and this action is dismissed with respect to Arch, SLS, and Mr. Goldberg.[1]

## I. BACKGROUND

On May 2, 2007, Mr. Letren obtained a loan against his property located in Capitol Heights, Maryland (the "Property") in the amount of $252,000, for which he signed a promissory note (the "Note") payable to the lender, MortgageIt, Inc. ECF No. 40 at ¶ 10; ECF No. 44-1. He also executed a Deed of Trust as a lien against the property, which named Mr. Letren as the Borrower, MortgageIt as the Lender, the Chicago Title Insurance Company as Trustee, and MERS as "nominee for Lender" and beneficiary under the security instrument. ECF No. 40 at ¶ 10; ECF No. 44-2 at 2–3.[2] Among the many obligations set forth in the Deed of Trust was a provision that required that, upon complete payment of the sums secured by the Deed of Trust, the Lender or Trustee "shall release [the Deed of Trust] and mark the Note 'paid' and return the Note to Borrower." ECF No. 44-2 at 14. At some point, Arch represented that it had become the owner of the loan and the Note holder, while SLS serviced the loan. *See* ECF No. 40 at ¶¶ 6–7. Mr. Goldberg and other attorneys of the law firm Cohn, Goldberg, and Deutsche, LLC were appointed as Substitute Trustees to the Deed of Trust by Arch on May 17, 2011 ("Substitute Trustees"). *Id.* at ¶ 9.

In May 2011, a foreclosure action was initiated against the property in the Prince George's County Circuit Court based on Mr. Letren's alleged default on the loan. *See Cohn, et al. v. Letren*, No. CAE11-13229 (Prince George's Cnty. Cir. Ct.) (the "Foreclosure Action"). The

---

[1] The docket does not reflect that the remaining Defendants, Deutsche Bank and MERS, have been served in this case. Accordingly, the Court will also issue an Order to show cause why this case should not be dismissed with respect to these Defendants.

[2] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Foreclosure Action was dismissed without prejudice in April 2012 following a denial of Mr. Letren's Motion to Stay and/or Dismiss. *See id.*; *see also* ECF No. 40 at ¶ 79. The following month, Mr. Letren filed an action against the Substitute Trustees alleging, *inter alia*, violations of the FDCPA, the MCDCA, and the MCPA in the Prince George's County Circuit Court. *See Letren v. Cohn, Goldberg & Deutsch, LLC*, No. CAL12-15920 (Prince George's County Cir. Ct.) (the "FDCPA Action"). That action was removed to federal court in July 2012. *See Letren v. Cohn, Goldberg & Deutsch, LLC*, No. 8:12-cv-01982-JFM (D. Md.). In an Amended Complaint filed in federal court, Mr. Letren alleged, among other things, that the Substitute Trustees improperly filed the Foreclosure Action. In particular, he alleged that the Note on which the Substitute Trustees relied in initiating the Foreclosure Action was "not a true and accurate copy" of the Note and that his signature had been forged on the document that the Substitute Trustees had sought to enforce. *See id.*, ECF No. 27-1 at ¶ 23. He further alleged that Arch was not the owner of the Note. *Id.* at ¶ 24.

On June 11, 2012, Mr. Letren, by counsel, filed another Complaint in the Prince George's County Circuit Court against Arch, SLS, MERS, Mr. Goldberg, and several other defendants, asserting a claim to quiet title. *See Letren v. MortgageIt, Inc., et al.*, No. CAE 12-17709 (Prince George's Cnty. Cir. Ct.) (the "Quiet Title Action"); *see also* ECF No. 40 at ¶ 83. In that action, Plaintiff alleged that he had "personally examined what was represented to him by a member of the [f]irm in which the . . . [Substitute] Trustees operate, to be the original Note" but that when he saw it, he "immediately concluded that the Note was a fake, forgery, alteration or mutilation . . . ." ECF No. 44-3 at 5. He further alleged that "[b]ecause no Defendants [in that action] have produced a complete, true and accurate debt instrument evidencing the debt secured by

3

[Plaintiff's] Property, no Defendants have any interest in the MortgageIt Deed of Trust," and that "the MortgageIt Deed of Trust should be stricken from the chain of title." *Id.*

While the FDCPA and Quiet Title Actions were pending, in November 2012, Plaintiff filed yet another action in Prince George's County Circuit Court alleging violations of the MCPA against SLS. *See Letren v. Specialized Loan Servicing LLC*, CAL12-36628 (Prince George's Cnty. Cir. Ct.) (the "MCPA Action").

To resolve these lawsuits, Mr. Letren, Arch, SLS, and the Substitute Trustees entered into a Release and Settlement Agreement (the "Settlement Agreement") dated September 20, 2013, in order to effectuate their "desire to settle, discharge and terminate all claims, controversies, and potential claims and controversies which may now exist, whether known or unknown, between them without resort to further litigation . . . ." ECF No. 44-4 at 3; *see also* ECF No. 40 at ¶¶ 36–37. Under the Settlement Agreement, the Parties recognized that Arch was the holder of Plaintiff's May 2, 2007 Note, which had a principal amount owed at that time of $281,674.44. ECF No. 44-4 at 2. The Settlement Agreement also acknowledged that SLS was the servicer of the Note. *Id.* The Settlement Agreement provided that Plaintiff would pay the sum of $90,000 to Arch as a payoff amount "in full accord and satisfaction of the debt evidenced by the said Note . . . ." *Id.* at 3. Upon receipt of the payoff, Arch was required to release the Deed of Trust encumbering the property as security for the Note. *Id.* And, in addition to requiring that Plaintiff release the three then-pending lawsuits, the Settlement Agreement also included the following general release:

> Mr. Letren hereby releases, acquits and forever discharges [Arch, SLS, and the Substitute Trustees], their agents, principals, heirs, executors, administrators, personal representatives, [etc.] . . . which are or might be claimed to be liable to Mr. Letren as a result of the Note, the Quiet Title Action, the MCPA Action, and/or the FDCPA Action, from any and all claims and demands of whatsoever nature . . . on account of or in any way growing out of personal injuries and/or

property damage having already resulted *or to result at any time in the future, or in any way related to the Note*, the Released Lawsuits, and/or alleged negligent acts or omissions set forth in any of the Released Lawsuits.

*Id.* at 5 (emphasis added); *see also id.* at 4 (providing that the Settlement Agreement constitutes "settlement in full for any and all claims or potential claims [Plaintiff] has, had or may have in the future against the Released Parties . . . arising out of the Note . . . ).

Plaintiff alleges that, in accordance with the Settlement Agreement, he did in fact pay $90,000 to Arch. *See* ECF No. 40 at ¶¶ 31, 37. A Certificate of Satisfaction was executed on March 24, 2014, and recorded on the land records in Prince George's County, Maryland, indicating that the Deed of Trust "has been fully paid and discharged" and that the lien held against the Property was released. ECF No. 52-9; *see also* ECF No. 40 at ¶ 51. The Quiet Title Action, the MCPA Action, and the FDCPA Action were all then voluntarily dismissed with prejudice. *See Letren v. MortgageIt, Inc., et al.*, No. CAE 12-17709 (Prince George's Cnty. Cir. Ct. Sept. 20, 2013); *Letren v. Specialized Loan Servicing LLC*, CAL12-36628 (Prince George's Cnty. Cir. Ct. Sept. 20, 2013); *Letren v. Cohn, Goldberg & Deutsch, LLC*, No. 8:12-cv-01982-JFM (D. Md. Oct. 4, 2013); *see also* ECF No. 44-5.

The present lawsuit arises out of Mr. Letren's allegation that, despite his payment of $90,000 in full accord and satisfaction of the remaining principal balance on the Note, that the Note has not been marked as "paid" and has not been returned to him, which violates the terms of the Deed of Trust. ECF No. 40 at ¶ 18. Mr. Letren alleges that "[u]pon information and belief the Defendants did not return the Note because the Defendants were not in possession of the original Note." *Id.* at ¶ 19. Thus, because Arch and/or SLS were not in possession of the Note, neither Defendant was a "holder" of the Note, they could not seek payment pursuant to it, and they were not entitled to receive the $90,000 Mr. Letren paid to them pursuant to the Settlement

Agreement. *Id.* at ¶¶ 20–21. Based on these facts, Mr. Letren alleges violations of the FDCPA, the MCDCA, and the MCPA, as well as breach of contract, unjust enrichment, and common law fraud. *Id.* at ¶¶ 22–94. Arch, SLS, and Mr. Goldberg now move to dismiss all claims against them. ECF Nos. 43 & 52.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

In reviewing a motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). While affirmative defenses may be reached by a motion to dismiss filed under Rule 12(b)(6), such a motion should be granted only in the "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir.2007) (en banc). Moreover, a movant cannot merely show that the elements of the defense appear on the face of the complaint or in properly considered documents, but must also "show that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Id.* at 466.

### III. DISCUSSION

Although the Defendants raise a myriad of arguments in their respective Motions, Arch, SLS, and Mr. Goldberg all principally argue that Mr. Letren's claims cannot proceed because they are barred by the Settlement Agreement and, relatedly, that because Mr. Letren's prior Quiet Title Action, FDCPA Action, and MCPA Action were dismissed with prejudice pursuant to the Settlement Agreement, his claims are now barred by res judicata. *See* ECF No. 44 at 9–11; ECF No. 52-2 at 10–12. The Court agrees.[3]

"It is well established that the doctrine of res judicata bars the relitigation of matters previously litigated between parties and their privies, as well as those claims that *could have been asserted* and litigated in the original suit." *Anyanwutaku v. Fleet Mortgage Grp., Inc.*, 85 F.

---

[3] Mr. Letren argues that dismissal on the basis of an affirmative defense such as res judicata is inappropriate under a 12(b)(6) motion. ECF No. 47 at 2–3; ECF No. 54 at 5. The Court disagrees. "Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint, when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000). Because Mr. Letren does not dispute the factual accuracy of the record of his previous lawsuits or the Settlement Agreement, it is appropriate for the Court to take judicial notice of those actions and consider the contents of the Settlement Agreement—a document that is indisputably integral to his Complaint.

Supp. 2d 566, 570 (D. Md.), *aff'd*, 229 F.3d 1141 (4th Cir. 2000) (emphasis in original) (citations omitted). "Res judicata, which is sometimes referred to as claim preclusion, helps to avoid 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.'" *Id.* (quoting *Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 503–04 (Md. 1989)). "The traditional principle of res judicata has three elements: (1) the parties in the present litigation should be the same or in privity with the parties to the earlier case; (2) the second suit must present the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." *deLeon v. Slear*, 616 A.2d 380, 385 (Md. 1992).

Plaintiff does not dispute that Arch, SLS, and Mr. Goldman were all parties to the various actions he previously filed or the Settlement Agreement that was entered to resolve those prior lawsuits. And the law is clear that a voluntary dismissal with prejudice "qualifies as an adjudication 'on the merits' and thus satisfies that requirement of res judicata." *Church v. Maryland*, 180 F. Supp. 2d 708, 748 (D. Md.), *aff'd*, 53 F. App'x 673 (4th Cir. 2002) (citing *Wooddy v. Wooddy*, 309 A.2d 754, 758 (1973); *Berrain v. Katzen*, 629 A.2d 707 (1993); *Moore v. Pomory*, 620 A.2d 323, 325 (1993)). With respect to the second element, namely, whether this action presents "the same cause of action or claim" as the previous suits, "federal courts and Maryland state courts have adopted the 'transaction test' to determine the identity of the causes of action." *Anyanwutaku*, 85 F. Supp. 2d at 571 (citing *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 (4th Cir. 1984); *deLeon*, 616 A.2d at 390). That is to say that, "as long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior

judgment, the first suit will have preclusive effect." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009).

Here, all of Mr. Letren's statutory claims and his claims alleging fraud and unjust enrichment arise out of "the same transaction or series of transactions" as the claims he raised in his prior suits. In particular, in the Quiet Title Action, he alleged that he had viewed what the Substitute Trustees represented to him to be the original Note, but he concluded that it "was a fake, forgery, alteration or mutilation . . . ." ECF No. 44-3 at 5. And in the FDCPA Action, he alleged that the Substitute Trustees improperly initiated the Foreclosure Action against him because the Note that they sought to enforce in that action was forged, and because Arch was not, in fact, the owner of the Note. *See Letren v. Cohn, Goldberg & Deutsch, LLC*, No. 8:12-cv-01982-JFM, at ECF No. 27-1 ¶¶ 23–24 (D. Md. Nov. 16, 2012). Here, too, Mr. Letren's claim of fraud and unjust enrichment and his claims under the FDCPA, the MCDCA, and the MCPA all blossom out of one common fact: that Mr. Letren believes that Arch was never in possession of the original Note and that Arch, SLS, and the Substitute Trustees, including Mr. Goldberg, should not have sought to enforce the Note against him. *See* ECF No. 40 at ¶¶ 25, 30, 35–42, 71, 81–94. This claim was previously raised in his prior lawsuits against these Defendants, and Mr. Letren agreed to dismiss those suits with prejudice upon the Parties' entry of the Settlement Agreement. Mr. Letren cannot now ignore the preclusive effect of that decision.

With respect to his claim for breach of contract, however, Mr. Letren argues that res judicata cannot bar the present suit because his claim did not accrue until he satisfied the debt obligation upon his payment of $90,000 under the Settlement Agreement. Only then, he argues, did a breach of contract occur because Defendants failed to return the Note to him as was required by the Deed of Trust. Any action for breach of contract, he argues, was therefore

unavailable to him in his prior actions. *See* ECF No. 54 at 2–3; *see also Ohio Valley Envtl. Coal.*, 556 F.3d at 210–11 ("Even claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit *and were available to the plaintiff at the time of the first suit*." (emphasis added)). While that may be so, the Settlement Agreement itself bars any action on Mr. Letren's breach of contract claim.

The Settlement Agreement is a contract and must be interpreted in accordance with general contract principles.[4] *Owens-Illinois, Inc. v. Cook*, 872 A.2d 969, 985 (Md. 2005). Thus, "when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* (citation omitted). Here, the Settlement Agreement is indeed plain and unambiguous. It provided that Mr. Letren's payment of $90,000 was "in full accord and satisfaction of the debt evidenced by the said Note," ECF No. 44-4 at 3, and that, in exchange for that agreement, Mr. Letren released all claims "having already resulted *or to result at any time in the future, or in any way related to the Note* . . . ." *Id.* at 5 (emphasis added). His breach of contract claim based on Defendants' failure to return the Note is certainly "related to the Note."[5] *Id.* Moreover, because the Settlement Agreement explicitly provided that the obligations thereunder were an "accord and satisfaction," the Settlement Agreement discharged the related duties that were previously owed under the Deed of

---

[4] The Settlement Agreement includes a Maryland choice-of-law provision, so Maryland rules of contract interpretation apply. *See* ECF No. 44-4 at 7; *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 467 (4th Cir. 2011) (noting that, under Maryland law, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will [generally] be applied").

[5] Mr. Letren's argument that he may continue to be held personally liable under the Note if some other person or entity is indeed in possession of it is belied by the fact that he has received a discharge of this debt in bankruptcy. *See In re: Neil F. Letren*, No. 09-33378 (Bankr. D. Md. Mar. 10, 2010). Although pursuant to the discharge, creditors still had the right to enforce a valid lien against Mr. Letren's property, the discharge prohibited any attempt by a creditor to collect directly from Mr. Letren. *See id.* at ECF No. 32.

Trust.[6] *See* Restatement (Second) of Contracts § 281 (1981) ("An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. *Performance of the accord discharges the original duty.*" (emphasis added)).

Thus, all of Mr. Letren's claims in this action are barred by res judicata and the Settlement Agreement that was reached as a result of his prior lawsuits. Dismissal is therefore warranted with respect to his claims against Arch, SLS, and Mr. Goldberg.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Arch and SLS's Motion to Dismiss, ECF No. 43, is **GRANTED** and Defendant Goldberg's Motion to Dismiss, ECF No. 52, is **GRANTED**. Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.[8] Additionally, because there is nothing in the docket to indicate that Deutsche Bank or MERS have been properly served, the Court will issue an order to show cause within fourteen (14) days of the Court's Order why the Complaint should not be dismissed as to these Defendants pursuant to Fed. R. Civ. P. 4(m). A separate Order follows.

Dated: March 25, 2016

GEORGE J. HAZEL
United States District Judge

---

[6] For this reason, Mr. Letren's argument that the Settlement Agreement is void and unenforceable against him because it was induced by fraud must fail. His only argument suggesting that the Settlement Agreement was induced by fraud is that Arch misrepresented that it was ever in possession of the Note, and his only basis for that conclusion is the fact that the Note has not been returned to him. *See* ECF No. 47 at 1, 3. But because that obligation under the Deed of Trust was extinguished by the Settlement Agreement, any inference Mr. Letren draws from the fact that the Note has not been returned to him does not support a claim of fraud.

[7] In light of this conclusion, the Court need not consider the additional arguments raised by Defendants.

[8] Although the first dismissal of an action is ordinarily without prejudice, *see Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999), this Court has discretion to dismiss an action with prejudice where "it is clear that amendment would be futile in light of the [complaint's] fundamental deficiencies[.]" *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). Because the litigation of Mr. Letren's prior actions to a final judgment poses a complete bar to his claims, any amendment of the Complaint alleging claims arising out of or related to the Settlement Agreement against Arch, SLS, Goldberg, or any other Parties to that Agreement would be futile.

11